UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| ROBERT SEGALMAN, | No. 2:11-cv-01800-MCE-CKD |
| Plaintiff, | |
| v. | MEMORANDUM AND ORDER |
| SOUTHWEST AIRLINES; And DOES 1 THROUGH 10, Inclusive, | |
| Defendants. | |

Robert Segalman ("Plaintiff") brought this action on July 8, 2011 against Southwest Airlines ("Defendant") and Does 1 through 10, asserting claims under the Air Carrier Access Act of 1986, 49 U.S.C. § 41705 ("ACAA") and general negligence. On June 22, 2012, Plaintiff filed a Second Amended Complaint ("SAC") asserting claims under federal and state law for denial of full and equal access to ground airport services and negligence. Specifically, Plaintiff alleges that Defendant failed to follow written instructions on how to store and transport his mechanized wheelchair when placing it in the cargo area, resulting in both damage to the wheelchair and subsequent injury to Plaintiff.

1

Defendant filed a Motion to Dismiss ("Motion") on July 9, 2012, alleging that the SAC fails to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]  Defendant further argues that federal preemption bars Plaintiff's claims.  Plaintiff filed an Opposition to Defendant's Motion on August 23, 2012, and Defendant filed a Reply on August 30, 2012.  Having considered the submitted papers by the parties, for the reasons stated below, Defendant's Motion will be GRANTED.

**BACKGROUND**

Plaintiff is an individual with cerebral palsy and can neither walk nor talk aloud.  (SAC at ¶ 8, ECF No. 27.)  Due to his condition, Plaintiff relies on a mechanized wheelchair to ambulate.  Plaintiff alleges that during the past four years, on more than one occasion, he arrived at a Southwest Airlines terminal after a flight without power to his wheelchair.  Plaintiff claims that when this has occurred, he had to use an uncomfortable and manual wheelchair (which he is unable to push himself) for up to twenty-four hours.  Plaintiff further claims that a wheelchair mechanic explained that power disruptions he experienced were due to failure on the part of Defendant's employees to follow written instructions on how to handle the wheelchair when placing it in cargo.

///
///

---

[1] Because oral argument was not of material assistance, the Court ordered this matter submitted on the briefing.  E.D. Cal. Local Rule 230(g).

2

1         In addition to these general allegations, Plaintiff alleges
2    three specific instances where the conduct of Defendant and its
3    employees amounted to discrimination, denying him full and equal
4    access within a public accommodation.  Plaintiff alleges that on
5    the first occasion in February 2009, on a round-trip flight from
6    Sacramento to Albuquerque, Defendant broke the arm and neck rests
7    of his wheelchair.  (Id. at ¶ 9.)  Second, Plaintiff also alleges
8    that on March 29, 2010, Plaintiff's wheelchair arrived in
9    San Diego missing one seatbelt which had been present on
10   departure from Sacramento.  (Id. at ¶ 10.)  Plaintiff states that
11   he arrived home on a Saturday, but was unable to make an
12   appointment to replace the seatbelt until the following
13   Wednesday.  Plaintiff claims that on Tuesday night, he fell out
14   of his wheelchair outside of his apartment building and broke his
15   shin in two places.  Due to his injuries, Plaintiff claims he
16   spent four days in the hospital.  The third and last incident
17   occurred on August 15, 2010, on a round-trip from Sacramento to
18   Portland, Oregon.  (Id. at ¶ 11.)  Plaintiff claims that when his
19   wheelchair arrived in Portland, it was without power and that
20   despite his calls to many wheelchair repair shops, he was unable
21   to find anyone to come out to fix it that day.  Plaintiff alleges
22   that a cable coming out of the joystick that charged the chair
23   had been pulled out of place during the flight, which caused the
24   loss of power.
25   ///
26   ///
27   ///
28   ///

1    Plaintiff did not file an administrative complaint with the
2 Department of Transportation ("DOT") against Defendant based on
3 the experiences described above.  Instead, Plaintiff filed the
4 instant action against Defendant on July 8, 2011, on the basis of
5 original and supplemental jurisdiction.  (ECF No. 1.)  Plaintiff
6 has since amended his complaint and the operative complaint is
7 now the Second Amended Complaint filed on June 22, 2012.  (ECF
8 No. 27.)  Plaintiff's SAC asserts three causes of action: (1)
9 failure to provide full and equal access to Defendant's facility,
10 in violation of the Americans with Disabilities Act of 1990
11 ("ADA"), 42 U.S.C. §§ 12182(a)-(b); (2) failure to provide full
12 and equal access to Defendant's facility, in violation of the
13 Unruh Act, California Civil Code section 51 and the Disabled
14 Persons Act, California Civil Code section 54; and (3)
15 negligence.

16    Defendant argues that the first cause of action should be
17 dismissed for failure to state a claim because the ADA does not
18 apply to aircraft and its operations.  Defendant contends that
19 because the ADA is inapplicable in this case and because the
20 applicable statute, the ACAA, does not provide for a private
21 right of action, Plaintiff's first cause of action should be
22 dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).
23 Defendant also argues that the second and third claims are
24 preempted by the ACAA and its governing regulations and
25 therefore, dismissal is appropriate due to federal preemption.
26 ///
27 ///
28 ///

**STANDARD**

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of a complaint. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). A Rule 12(b)(6) dismissal may be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. Johnson v. Riverside Healthcare Sys., LP, 534 F.3d 1116, 1121 (9th Cir. 2008). When considering whether a complaint is sufficient to state a claim, the court must accept as true all material factual allegations contained in the complaint and construe them in the light most favorable to the plaintiff. Nursing Home Pension Fund, Local 144 v. Oracle Corp., 380 F.3d 1226, 1229 (9th Cir. 2004). This principle does not apply to legal conclusions. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 554, 555 (2007)).

The requirements of a complaint are minimal as Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" to "give the defendant fair notice of what the...claim is and the grounds upon which it rests." Twombly, 550 U.S. at 555 (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). While a complaint does not need to allege detailed factual allegations, it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Id. at 557 (internal citations and quotations omitted).

///

A complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

After a court has decided to grant a 12(b)(6) motion, it must then decide whether to grant leave to amend. A court should "freely give" leave to amend when there is no "undue delay, bad faith[,] dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of . . . the amendment, [or] futility of the amendment...." Fed. R. Civ. P. 15(a); Foman v. Davis, 371 U.S. 178, 182 (1962). Generally, leave to amend should be granted unless the pleading could not possibly be cured by the allegation of other facts. Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000) (quoting Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995)).

**ANALYSIS**

**A.   Applicability of the ADA to Plaintiff's Claims**

Title III of the Americans with Disabilities Act prohibits discrimination against individuals with disabilities in places of public accommodation. 42 U.S.C. § 12182(a) (2006). Defendant argues that Plaintiff's Title III claim fails to state a claim upon which relief may be granted because the applicable statute is not the ADA. (Def.'s Mot. to Dismiss 4:15-17, ECF No. 30-1.)

1  In response, Plaintiff contends that because the ADA only
2  expressly excludes aircraft and the injury occurred at the
3  airport terminal, the ADA does apply.  (Pl.'s Opp'n 3, ECF
4  No. 31.)  Defendant maintains that whether the injury occurred at
5  an airport terminal or an airplane is irrelevant as the ACAA is
6  clearly the applicable statute.  (Def.'s Reply 3, ECF No. 33.)
7       The ADA prohibits discrimination on the basis of disability
8  with respect to full and equal enjoyment in places of public
9  accommodation.  42 U.S.C. § 12182 (2006).  Private entities that
10 affect commerce are also considered public accommodations.  See
11 42 U.S.C. § 12181(7) (2006).  Private entities that are
12 considered public accommodations include "a terminal, depot, or
13 other station used for specified public transportation."  42
14 U.S.C. § 12181(7)(G) (2006).  "Specified public transportation"
15 is defined as "transportation by bus, rail or any other
16 conveyance (*other than aircraft*) that provides the general public
17 with general or special service (including charter service) on a
18 regular and continuing basis."  42 U.S.C. § 12181(10) (2006)
19 (emphasis added).
20      Plaintiff argues that this Court has jurisdiction because
21 there is a meaningful difference between discrimination occurring
22 at an airport terminal instead of on an aircraft itself.  The
23 distinction Plaintiff advances in that regard, however, is
24 unpersuasive.
25 ///
26 ///
27 ///
28 ///

7

The statutory definition under the ADA of "public accommodation," along with the explicit exclusion of aircraft, leads to the inescapable conclusion that the ADA's protections do not encompass terminals, depots, or stations used for air transportation.[2]  The case law Plaintiff cites in support of his ADA claim is also unpersuasive.  Plaintiff cites to Thomas v. Northwest Airlines, No. 08-11580, 2008 WL 4104505 (E.D. Mich. Sept. 2, 2008), in support of his ADA claim.  (Pl.'s Opp'n 3:22-4:17, ECF No. 31.)  However, as another district court in California recently found, the Thomas court misconstrued the scope of the ACAA.  See Gilstrap v. United Air Lines, Inc., No. 2:10-cv-06131-JHN-JCx, 2011 WL 8318395, at *5 (C.D. Cal. Jan. 21, 2011).  The Gilstrap court found the Thomas court's holding that the ACAA applies only to aircraft "is contrary to the clear scope of the ACAA, which applies to air *carriers* rather than to airplanes, and to the scope of its regulations, which encompass airport facilities as well as airplanes themselves."  Id. (emphasis in original).

---

[2] Plaintiff cites to Bynum v. Am. Airlines, Inc., 166 Fed. App'x. 730, 733 (5th Cir. 2006) citing Access, Now, Inc. v. Southwest Airlines, Co., 385 F.3d 1324, 1332 (11th Cir. 2004) for the proposition that it is not clear precedent that Title III of the ADA does not apply to airplanes. (Pl.'s Opp'n 3:19-20), ECF No. 31.)  This is not an accurate reading of the case.  First, the Eleventh Circuit in Access Now did not address the merits of whether accessibility to Southwest's website for visually impaired individuals violated the ADA.  Second, the distinction which Plaintiff draws between an injury occurring at an airplane terminal and on an aircraft itself is addressed by the court which explicitly states that "airplanes and *their accompanying terminals and depots* are covered by ... the pre-ADA Air Carrier Access Act."  Id. (emphasis added).  If anything, Access Now undermines Plaintiff's argument because the Eleventh Circuit clearly states that an airline's accompanying terminals and depots are covered by the ACAA and not the ADA.  Therefore, whether the discrimination occurred on the physical aircraft itself or the terminal is irrelevant because the ACAA would apply in either case.

8

1    Additionally, the DOT regulations providing guidance for the
2 implementation of the ACAA demonstrate that the ACAA's purview is
3 not limited solely to aircraft.  Specifically, the federal
4 regulation states that the ACAA "prohibits both U.S. and foreign
5 carriers from discriminating against passengers on the basis of
6 disability; requires carriers to make aircraft, *other facilities*,
7 and services accessible; and requires carriers to take steps to
8 accommodate passengers with a disability."  14 C.F.R. § 382.1
9 (emphasis added).  "Facility" encompasses more than just aircraft
10 as it includes "any portion of an airport that a carrier owns,
11 leases, or controls (e.g., structures, roads, walks, parking
12 lots, ticketing areas, baggage drop-off and retrieval sites,
13 gates, other boarding locations, loading bridges) normally used
14 by passengers or other members of the public."  14 C.F.R.
15 § 382.3.  The federal regulations interpreting and implementing
16 the ACAA indicate that Congress intended the ACAA to apply not
17 only to aircraft but also to its related facilities and services.
18 Therefore, because aircraft is not "specific public
19 transportation" as defined under the ADA, and the airport
20 terminal is not a place of public accommodation for ADA purposes,
21 Plaintiff's ADA claim must be dismissed for failure to state a
22 claim upon which relief may be granted.

24    **B.   Applicability of the ACAA to Plaintiff's Claims**

26    While Plaintiff does not assert a cause of action under the
27 ACAA in his SAC, given that the original complaint stated a claim
28 under the ACAA, it will be discussed briefly.

9

The ACAA prohibits discrimination against physically or mentally disabled individuals in air transportation by domestic and foreign air carriers, stating "[i]n providing air transportation, an air carrier, including (subject to section 40105(b)) any foreign air carrier, may not discriminate against an otherwise qualified individual." 49 U.S.C. § 41705 (2006). There is no express private right of action in the ACAA.

Circuit courts are currently split as to whether there is an implied private right of action under the ACAA. See Shinault v. Am. Airlines, Inc., 936 F.2d 796, 800 (5th Cir. 1991) (holding that that ACAA allows damage remedies); Tallarico v. Trans World Airlines, Inc., 881 F.2d 566, 570 (8th Cir. 1989) (holding that allowing a private cause of action is consistent with the underlying purposes of the ACAA); cf. Lopez, 662 F.3d 593 (2d Cir. 2011) (holding that there is no implied private right of action in the ACAA); Boswell v. Skywest Airlines, Inc., 361 F.3d 1263 (10th Cir. 2004) (same); Love v. Delta Air Lines, 310 F.3d 1347 (11th Cir. 2002) (same). The Ninth Circuit has yet to address whether there is an implied private right of action under the ACAA.[3]

---

[3] In Adiutori v. Sky Harbor Int'l Airport, 103 F.3d 137 (9th Cir. 1996), the Ninth Circuit held that there was an implied private right of action under the ACAA. However, in reaching this result, the court was interpreting the ACAA as enacted in 1986. This version was repealed in 1994 and was materially different from the ACAA as it reads today. The ACAA was amended in 2000 to add a specific provision providing administrative procedures for the investigation of complaints of discrimination against individuals with disabilities by the Secretary of Transportation, which did not exist under the original version of the statute. Additionally, in concluding that there was an implied private right of action under the ACAA, the court applied the Supreme Court's four-part test developed in Cort v. Ash, 422 U.S. 66, 78 (1975), which discussed relevant factors in determining whether a private
(continued...)

10

1 Following the Supreme Court's decision in <u>Alexander v. Sandoval</u>,
2 532 U.S. 275 (2001), which narrowed the authority of courts to
3 find implied rights of action in statutes that do not expressly
4 create a private cause of action, some circuit courts have been
5 reluctant to find an implied private right of action in the ACAA.
6 <u>See</u> <u>Lopez</u>, 662 F.3d 593 (2d Cir. 2011); <u>Boswell</u>, 361 F.3d 1263
7 (10th Cir. 2004); <u>Love</u>, 310 F.3d 1347 (11th Cir. 2002).

8   While the ACAA does not contain an express private right of
9 action, it provides for an administrative investigation by the
10 Secretary of Transportation.  49 U.S.C. § 41705(c) (2006).  There
11 is also a detailed statutory mechanism describing the proper
12 procedure for complaints and investigations and the enforcement
13 mechanisms employed by the Department of Transportation or the
14 Attorney General when a complainant alleges a violation of the
15 ACAA.  <u>See</u> 49 U.S.C. §§ 46101-46111 (2006).  Because there is no
16 express private right of action under the ACAA, this Court must
17 find an implied private right of action to retain jurisdiction
18 over this case.

19   However, after <u>Sandoval</u>, absent a showing of congressional
20 intent, "a cause of action does not exist and courts may not
21 create one, no matter how desirable that might be as a policy
22 matter, or how compatible with the statute." 532 U.S. at 286-87.
23 The ACAA provides a very limited right of access to the federal
24 courts.  <u>See</u> 49 U.S.C. § 46110(a).

---

[3](...continued)
remedy is implicit in a statute. However, in 2001, the Supreme Court narrowed
the circumstances where an implied private right of action may be found in a
statute which does not expressly provide for a private cause of action. <u>See</u>
<u>Alexander v. Sandoval</u>, 532 U.S. 275 (2001).

11

Under the ACAA, only an individual with "substantial interest" in an administrative order issued by the DOT may file a petition for review in a United States Court of Appeals. Id.  There is no provision in the statute that provides for a violation to be enforced through an action in federal district court.  Given the statutory provisions detailing the administrative enforcement mechanisms for violations of the ACAA, it appears that Congress did not intend for the courts to find an implied private right of action; therefore, this Court declines to find a private right of action in the ACAA.

This Court is also precluded from presiding over the present action because Plaintiff has failed to exhaust his administrative remedies.  The ACAA provides a detailed administrative enforcement scheme that is designed to protect the rights of disabled passengers on aircraft.  See 49 U.S.C. §§ 40101-46111. Plaintiff has not pled any facts showing that he has filed a written complaint alleging a violation of the ACAA to the DOT. Therefore, even if the ACAA were to infer an implied private right of action, this Court would still lack jurisdiction because Plaintiff has failed to exhaust the available administrative remedies pertaining to an ACAA claim.

**C.   General Principles Governing Preemption**

Defendant also argues that Plaintiff's second and third causes of action, which allege violations of state disability laws and common law negligence are preempted by the ACAA.  (ECF No. 30-1 at 8.)

12

According to Defendant, because there is no private right of action under the ACAA, dismissal is appropriate pursuant to Rule 12(b)(6). (Id.)  Plaintiff, on the other hand, contends that the state law claims are not preempted by the ACAA because the claims do not depend on duties previously regulated by the ACAA. (Pl.'s Opp'n 7:1-2, ECF No. 31.)

It is well established that Congress has the power to preempt state law. U.S. Const. art. VI, cl. 2; Crosby v. Nat'l Foreign Trade Council, 530 U.S. 363, 373 (2000). State law may be preempted either expressly or impliedly. Crosby, 530 U.S. at 373. Express preemption occurs when courts "find language in the federal statute that reveals an explicit congressional intent to pre-empt state law." Barnett Bank of Marion Cnty., N.A., v. Nelson, 517 U.S. 25, 31 (1996). In the absence of express preemption, preemption is implied either by conflict preemption or field preemption. Gade v. Nat'l Solid Wastes Mgmt. Ass'n, 505 U.S. 88, 98 (1992). Conflict preemption is implied where "compliance with both federal and state regulations is a physical impossibility" or where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Id. (internal citations omitted). Field preemption is found when the regulatory scheme is "so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it." Id. (internal citations omitted). In this case, Defendant focuses on field preemption, arguing that because the federal regulations and guidelines regarding wheelchair transportation and stowage are so pervasive, the state law claims are preempted. (ECF No. 30-1 at 6.)

13

Plaintiff maintains that field preemption does not apply because there are no regulations that provide for the procedures for the transportation of a wheelchair. (ECF No. 31 at 8.)

### 1.  **Ninth Circuit Precedent**

The Ninth Circuit has not addressed the preemptive effect of the ACAA on state law claims. <u>Summers v. Delta Airlines, Inc.</u>, 805 F. Supp. 2d 874, 878 (N.D. Cal. 2011). However, the Ninth Circuit's analysis for the preemptive effect of the Federal Aviation Act ("FAA") may be helpful in determining the preemptive effect of the ACAA. In analyzing FAA preemption, courts have generally looked at the "pervasiveness of federal regulations in the specific area covered by the tort claim or state law at issue." <u>Martin ex rel. Heckman v. Midwest Express Holdings, Inc.</u>, 555 F.3d 806, 809 (9th Cir. 2009); <u>Ventress v. Japan Airlines</u>, 828 F. Supp. 2d 1166, 1173 (D. Haw. 2011). Regarding the preemptive effect of the FAA, the Ninth Circuit has held that when a federal "agency issues 'pervasive regulations' in an area ... the FAA preempts all state law claims in *that* area. In areas without pervasive regulations or other grounds for preemption, the state standard of care remains applicable." <u>Martin</u>, 555 F.3d at 811.

In the Ninth Circuit, a few district court cases have addressed whether the ACAA preempts state law claims. Some of these courts have found that the ACAA does preempt state law claims when claims depend on duties pervasively regulated by the ACAA.

14

Edick v. Allegiant Air, LLC, No. 2:11-CV-259 JCM (GWF), 2012 WL 1463580, at *3 (D. Nev. Apr. 27, 2012) (finding that state law negligence claims were preempted by ACAA which extensively regulates the provision of wheelchair services); Russell v. Skywest Airlines, Inc., No. C 10-0450 MEJ, 2010 WL 2867123, at *5 (N.D. Cal. July 20, 2010) (same); Johnson v. Northwest Airlines, Inc., No. C 08-02272 VRW, 2010 WL 5564629 (N.D. Cal. May 5, 2010) (same).  One court recently held that the ACAA does not preempt all claims relating to interactions between air carriers and disabled passengers, finding that to the extent that a claim depends on duties pervasively regulated by the ACAA, there is preemption, but to the extent that a claim is based on a duty that is not specifically regulated by the ACAA, there is no preemption.  Summers, 805 F. Supp. 2d at 882, 885.

**D.   Application of ACAA Preemption to Plaintiff's Claims**

The DOT has issued pervasive regulations regarding the provision of wheelchair-related services for disabled passengers. See 14 C.F.R. §§ 382.121-.129 (2008).  There is an express provision which governs the stowage and transportation of wheelchairs for disabled passengers.  14 C.F.R. § 382.129 (2008). Subsection (a) specifically requires aircraft carriers to "permit passengers with a disability to provide written directions concerning the disassembly and reassembly of their wheelchairs" and that these instructions must be carried out "to the greatest extent feasible."  Id.
///

1  The regulation also instructs air carriers that when
2  disassembling wheelchairs for storage, carriers "must reassemble
3  them and ensure their prompt return to the passenger . . . in the
4  condition in which you received them."  Id.
5      The three specific instances which Plaintiff argues
6  constitute violations of state law discrimination laws are
7  related to the stowage and transportation of Plaintiff's
8  wheelchair.  (ECF No. 27 at ¶¶ 9-11.)  To the extent that
9  Plaintiff's claims are premised on a violation of Defendant's
10 duty to properly stow and transport Plaintiff's wheelchair, this
11 Court agrees with Defendant that Plaintiff's claims are subject
12 to field preemption by the ACAA.  While Plaintiff argues that his
13 claims are not field preempted because his claims are based on
14 the standards of care regarding the transportation of wheelchairs
15 (unlike cases where claims depended on the provision of
16 wheelchair services), 14 C.F.R. § 382.129 expressly provides
17 explicit instructions on the duties an air carrier has with
18 respect to the stowage and transportation of wheelchairs.
19 Because Plaintiff's state law claims are preempted by the ACAA,
20 they cannot be amended to cure the deficiency.  This Court agrees
21 with the Gilstrap court's rejection of Thomas' holding that the
22 ADA does apply to airport terminals.  Id. at *5 n.5.
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

16

**CONCLUSION**

For all the foregoing reasons, Defendant's Motion to Dismiss (ECF No. 30) is GRANTED. Because the Court believes that the deficiencies of Plaintiff's complaint cannot be cured through amendment, no leave to amend will be accorded. The Clerk of this Court is accordingly directed to close this file.

IT IS SO ORDERED.

Dated: October 23, 2012

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE

17